**GROUNX ET ALS. f. p. c. *vs.* ABAT'S EXECUTORS.**

APPEAL FROM THE PARISH COURT, FOR THE PARISH AND CITY OF NEW-ORLEANS.

Where colored persons have been treated with as *free,* in a certain transaction or compromise, their freedom and capacity to enter into such an engagement, cannot afterwards be questioned, by the other party, with a view of avoiding the contract, on the ground that they were slaves; much less for the purpose of depriving them of the common privilege of all parties to a contract, i. e. that of contesting its validity, on the score of error and fraud.

The executor is bound to administer on all the property of a succession which is expressly declared in the will by the testator to form a part of his estate; even on property claimed by an adverse title, unless inhibited by competent authority.

Persons claiming as legatees under a will, cannot set up title to property under an anterior sale and conveyance, which is expressly declared in the will to form a part of the estate of the testator.

A transaction entered into on the part of minors, duly represented, and made according to the forms of law, will cure defects in a judgment which was not conclusive, and against which the minor might otherwise be relieved.

Where the curator *ad bona* of a minor above the age of puberty, purchased property for the use and in the name of his ward, at the sale of his father and mother's estate, and during his minority in an action of partition he is charged with his share of the estate thus purchased and received, by a judgment of the Probate Court: In an action to set aside the purchase, as having been made without his concurrence and consent: *Held,* that he was precluded by the judgment of the Probate Court so long as it stood unreversed.

Where the price of minors' property has been received by their tutor, and placed to their credit on a tableau of distribution of the tutor's estate, which is homologated by a judgment of the Probate Court, and is unappealed from, the minors are precluded from setting up title to the property itself, so long as the judgment of homologation subsists, showing they have received the *price.*

3

EASTERN DIST.
June, 1854.

GROUNX ET ALS.
f. p. c.
vs.
ABAT'S EX'S.

Transactions have, between the parties, the authority of the thing adjudged; and where the parties compromise generally on all differences, the titles which are unknown and afterwards discovered, are not cause for rescinding the transaction, unless they have been concealed purposely by one of the parties.

And where the renunciation of all claims and demands, in an act of compromise or transaction, is full and explicit, and no mention is made of a latent title to certain property included in the transaction, but no evidence showing that the title was concealed on purpose by the party, the transaction will not be rescinded.

Judgments rendered by courts of competent jurisdiction, against minors duly and legally represented, so long as they are not reversed or declared to be null, have the same force and validity as if the parties were of full age.

In an appeal where security is given merely and expressly for costs, the execution of the judgment below is not suspended thereby : it is not a suspensive, but merely a devolutive appeal.

An injunction bond given at the inception of the suit, cannot be cumulated with the appeal bond given in the same suit on appeal.

The present suit commenced by injunction. The record shows, that on the 7th January, 1833, the executors of Antoine Abat obtained an order of seizure and sale against the present plaintiffs, who are the acknowledged natural children and heirs of Jean Grounx, deceased, for the sale of a house and lot of ground, on the corner of Rampart-street and the Bayou road, in virtue of a certain deed of compromise or transaction, entered into the 3d October, 1832, between the said heirs, represented by their tutor and co-heir, Jean Baptiste Grounx, f. m. c., and the executors of Antoine Abat; which said house and lot of ground was confirmed to the heirs of Grounx for the price of four thousand nine hundred dollars, and mortgage retained, with the express provision that if the price was not paid on the 31st of December following, the property should be seized and sold.

On the 17th day of January, 1833, the present plaintiffs, by their under-tutor, J. Monrose, f. m. c., filed their petition and opposition to the order of seizure and sale, in which they

allege that since the execution of the transaction or compro-
mise of the 3d October, 1832, they have learned that the
house and lot of ground in contest was originally their pro-
perty, and belonged to them at that time, in virtue of an act
of sale passed the 21st January, 1818, by their natural father,
in which he conveyed said property to their natural mother,
and in trust for their use and benefit, in consideration of the
sum and for the price of five thousand dollars.   They further
allege that, being ignorant of said sale and title to said pro-
perty, their tutor and representative in said transaction was
induced to accede thereto through error, and bind them for
the price of four thousand nine hundred dollars as a new
purchase of said property.   They specially charge that this
title was withheld, and not set forth and made known by the
executors of Abat, who had charge of their natural father
and mother's business at the time of signing the said transac-
tion; and that the same was executed on the part of these
plaintiffs through error, on the one hand, and obtained by
unlawful means on the other.

1. They pray that they may be declared to be the true and
lawful owners of the property in contest, in virtue of the act
of sale dated the 21st January, 1818.

2. That the said transaction or compromise be declared
null and void as regards the engagement requiring them to
pay to Abat's executor four thousand nine hundred dollars, as
the price of said property.

3. That their tutor and co-heir who signed the transaction,
be prohibited from paying said sum of four thousand nine
hundred dollars.

4. That under the articles 303 and 739, No. 6, of the Code
of Practice, relative to acts obtained by unlawful means, they
pray for an injunction to stay all proceedings under the order
of seizure and sale.

5. That under the articles 739 and 740 of the Code of
Practice, they pray that their under-tutor, by whom they
institute this suit, be dispensed with giving security; and that
Jean B. Grounx, f. m. c., their tutor, and the executors of
Abat, be cited to answer their petition; that the transaction

EASTERN DIST.
June, 1834.

GROUNX ET ALS.
f. p. c.
vs.
ABAT'S EX'S.

of the 3d of October, 1832, be annulled, and that in the mean time all proceedings under the order of seizure and sale be enjoined.

Abat's executors excepted to the form of the plaintiffs' opposition to their order of seizure and sale, as being contrary to the article 738 of the Code of Practice. They deny generally the allegations of the plaintiffs, except the execution of the transaction or act of compromise; and deny specially that it was made or obtained either in error or by unlawful means, which charge is slanderous, and should be struck out. They allege, that at the time of the compromise or transaction, the pretended deed of sale of the 21st January, 1818, was well known to all parties to be a nullity, and was not, therefore, deemed necessary to be noticed or mentioned; that it was null and void, for the following reasons:

1. As a sale, it was without consideration and a disguised donation.

2. As a donation, it contained conditions contrary to good morals.

3. It was not recorded with the recorder of mortgages.

4. As a donation, it exceeded the disposable portion.

5. The donor subsequently declared in his will that the said sale was intended as a mere donation.

6. The parties to said act of sale, viz: the natural father and mother of the plaintiffs, have by a subsequent act, dated the 24th February, 1821, acknowledged and declared that said sale was feigned and simulated, and that it is hereby annulled and avoided.

7. Because the property claimed by the plaintiffs as minors in virtue of said sale, was inventoried and sold by order of the Court of Probates, as a part of the succession of Jean Grounx, deceased, their natural father.

8. Because in the settlement of said succession, the plaintiffs received their full share of the *price* of the very property they now seek to recover under the said pretended sale.

9. Because at the time of executing the act of sale of the 21st January, 1818, the plaintiffs were slaves, and incapable of acquiring property by purchase or donation.

EASTERN DIST.
June, 1834.

GROUNX ET ALS.
f. p. c.
vs.
ABAT'S EX'S.

J. B. Grounx, tutor of the plaintiffs, appearing adversely, answered and prayed, that the deed of transaction be declared good and maintained in full force between the contracting parties; and that the executors of Abat make good the title to the property in contest, in pursuance of the obligation contracted in said transaction.

He further prayed, that in case said property should be decreed to belong to said minors in virtue of the sale of the 21st January, 1818, that Abat's executors be ordered to pay the value thereof to him; and that he be dispensed from paying the price as agreed on in said transaction.

The two causes, viz: the case of the order of seizure and sale by Abat's executors, against the present plaintiffs, was consolidated with the present suit, and both tried together.

The plaintiffs were ordered to give security in the sum of two thousand dollars, before they could proceed with the injunction suit.

Upon these pleadings and issues, the parties went to trial. The plaintiffs relied on the act of sale of the 21st January, 1818, by their natural father, of the property in question, in which he acknowledges that he sells and conveys the same to Marie Adelaide, f. w. c., and the mother of the plaintiffs, who was present, accepting said sale for her children, who were all minors. Grounx, in the same act, acknowledges the said minors to be his natural children by the said Adelaide.

Abat's executors showed, by parole testimony, that this act of sale was well known to both parties at the date of the deed of transaction, and that the plaintiffs had been advised by counsel that it was a nullity. They introduced in evidence the transaction itself, in which both parties, being duly represented, settled and compromised all their difficulties, rights and law-suits up to its date, the 3d October, 1832. Grounx in his will, which was written in 1819 (also in evidence), acknowledges the plaintiffs to be his natural children, and gives them the right to take the property now in contest at its estimated price in the inventory, in lieu of certain legacies which he leaves them. In February, 1821, Grounx and Adelaide both signed a notarial act, in which they

EASTERN DIST.
June, 1834.

GROUNX ET ALS.
f. p. c.
vs.
ABAT'S EX'S.

declared the act of 1818, under which the plaintiffs now claim, simulated, that no price was ever paid or intended to be paid, *and they cancel it.* This act was produced in evidence. Abat was appointed dative executor of the succession of Grounx, after his death in 1823, under the will which was established and ordered to be executed. The property now in contest was inventoried at five thousand dollars, was sold at public sale by the register of wills for four thousand nine hundred and fifty dollars, the net proceeds being four thousand eight hundred dollars; one half or two thousand four hundred dollars, was paid over by the executor to Adelaide, the natural tutrix and mother of the plaintiffs, for their use and as their share of their natural father's estate under the will. Adelaide afterwards made a surrender of her property, and put her children on her *bilan* as privileged creditors for the sum of two thousand four hundred dollars, received from their father's estate. This sum was also put on the tableau of distribution to their credit, which was duly homologated by a judgment of the court. The evidence further showed that the plaintiffs, or some of them, received their portion of this money.

The parish judge considered the act of sale under which the plaintiffs claimed, as a *nullity ;* that it was cancelled by the act of the parties afterwards, which rendered it unnecessary to go into an examination of the validity of the transaction or compromise. He gave judgment for the executors of Abat, and dissolved the injunction.

Judgment was signed on the 6th May, 1833. The plaintiffs presented their petition, and prayed an appeal to the Supreme Court, on their giving security in such sum as the court might direct *for the costs of the appeal.* On the 11th May the judge granted the appeal, and required the appellants to give security in the sum of *one hundred and fifty dollars,* returnable to the *third Monday of the next month.*

On the 20th May, *D. Seghers,* counsel for Abat's executors, obtained an *alias* order of seizure and sale against the disputed premises, on showing to the court that the judgment dissolving the injunction, had been notified to the plaintiffs

more than *ten days*, and that the appeal was only *devolutive*, <span>EASTERN DIST.</span> security being given *for costs only*. <span>June, 1834.</span>

*Magnin*, counsel for the plaintiffs, took a rule on Abat's <span>GROUNX ET ALS.</span> executors, to have the above order set aside, on the ground <span>f. p. c.</span> that the appeal, having been taken within ten days from <span>ABAT'S EX'S.</span> signing the judgment, was *suspensive*, especially as the plaintiffs had given security in the injunction in the sum of two thousand dollars, which bond was still in force.    On the 22d June, judgment was rendered on the rule, maintaining the *alias* order of seizure and sale.    From this judgment the plaintiffs also appealed, giving security for *costs only*.

*Magnin*, for the plaintiffs. The decision of this case depends principally on two questions:

1. Were minors Grounx free, at the date of the sale of January, 1818, to their mother, for their benefit, of the property in question; and, secondly, is this sale valid?

2. The plaintiffs were free, because their mother was emancipated in 1804, long before their birth; they were consequently born free, and baptized as free-born.   In all these proceedings, they are treated as free persons of color.

3. We contend that the act of 1818, whether considered as a sale or donation, vested the property in the minors Grounx, which none of the subsequent acts of the parties could divest, either in attempting to rescind it as a sale, or revoke it as a donation.

4. The right to said property being vested in the minors Grounx, by said sale, and never being divested, continued to be their property at the date of the transaction or compromise.

5. The clause of the deed of transaction, which stipulates that the minors should pay a *price* for their own property, is not binding on them ; because there is error in the motive.   It is a nullity, and fraudulent as to them.   *La. Code,* 1818, 2418, 1824, 5, 6, *and* 1875 *and* 6.

6. Two judgments have been rendered in this case; the second maintaining the *alias* order of seizure and sale of the property in dispute, notwithstanding the appeal taken from the first judgment, in the manner directed by law, to make it *suspensive*.

EASTERN DIST.
June, 1834.

GROUNX ET ALS.
f. p. c.
vs.
ABAT'S EX'S.

7. The court below erred in granting the *alias* order, until the appeal from the first judgment was decided.

*D.* and *J. Seghers,* for Abat's executors and the appellees.

1. The donation by the late Grounx to his natural children, could not exceed the disposable portion, and the value of the property thus disposed of, was to be determined at the time of the donor's decease. This has been done. The lot of ground now claimed by the natural children of Grounx, was inventoried and sold, together with the other property of the said Grounx. The proceeds were divided between his sisters and his natural children; and by a final judgment of homologation, his natural children, *duly represented,* have received two thousand four hundred dollars, which was their share and all they could claim in their father's estate. This point is *res judicata* with regard to them, because the validity of a court of competent jurisdiction, cannot be examined collaterally by the parties thereto, or those who claim under them.

2. The same rule applies likewise to the judgment homologating the tableau of distribution of Adelaide Grounx's estate. Abat was her syndic, and the minors Grounx, *duly represented,* were parties to this suit. The said judgment is, therefore, *res judicata,* as to them; and it will be observed that among the property she surrendered to her creditors, was, first, this very lot which she had bought from Galez, who purchased it at the probate sale of the succession of Jean Grounx; and, secondly, a family of slaves belonging to her, and which Abat bought for her children, viz: for the minors Grounx, the present claimants.

3. The transaction or *compromise,* to which they were parties and *duly represented,* explains in the most satisfactory manner, that the two thousand four hundred dollars, coming to the minors Grounx, as their share in their father's estate (it being the amount of the disposable portion), never was in Abat's hands. The said disposable portion was first paid to their mother and natural tutrix.

4. When she failed, the said sum was employed by Abat in the acquisition of a family of slaves, which slaves are acknowledged by the above minors, in this very compromise, to have always been in their possession. The said slaves made no part of Grounx's estate, as it has been erroneously asserted, but belonged to Adelaide Grounx, the mother of said minors, before her failure, and were surrendered by her to her creditors.

EASTERN DIST.
June, 1834.
GROUNX ET ALS.
f. p. c.
vs.
ABAT'S EX'S.

5. The lot of ground now claimed by the minors of Grounx, cannot, therefore, be restored to them, since they have received from their natural father, all they could claim, viz: the disposable portion. If the contrary doctrine could prevail, the minors Grounx would receive at once *the price* and *the thing ;* which would lead to an absurdity.

6. The appellees further contend that, notwithstanding the pretended discovery of the pretended deed of sale, which in fact was never concealed except by the appellants themselves, the transaction or compromise must, nevertheless, prevail, under the provisions of the *La. Code, art.* 3050.

*Fourchy,* for J. B. Grounx, tutor to the plaintiffs, urged that the motives which induced the execution of the deed of transaction, were to avoid a law-suit which was about to be commenced against Abat's executors, for damages sustained by the minors Grounx, arising from unfaithfulness in Abat's different stations of attorney in fact of Grounx, as dative executor of Grounx's estate, as syndic of Adelaide's creditors, and as syndic of the creditors of Rosileitte Pradere, who was indebted to the estate of Grounx.

*Preston,* for the plaintiffs, and in reply.

1. The plaintiffs made opposition to the seizure and sale obtained by Abat's executors, on the ground that the land belonged to them by a sale from Jean Grounx, their father, to their mother, Marie Adelaide, for them, by a deed dated the 21st of January, 1818. Some of the records show 29th, instead of 21st; but this is an error. They base their opposition upon *art.* 2418 *of the La. Code.*

2. To their opposition it is seriously urged, that they were slaves on the 21st January, 1818, and therefore incapable of

4

Eastern Dist.
June, 1834.

GROUNX ET ALS.
f. p. c.
vs.
ABAT'S EX'S.

acquiring property from their father, Jean Grounx. If they were slaves in 1818, they are so still, as no subsequent act of emancipation has been produced.

3. The executors of Abat are estopped from making this defence, because if the plaintiffs are slaves, incapable of making opposition to legal process, they are equally incapable of being proceeded against. If by reason of their slavery in 1818, they could not acquire property, their condition has not been altered so as to contract an obligation in 1832.

4. Again, there is no proof that they are slaves. An act of emancipation of their mother is produced; but neither the mother nor her children were parties to it, and are not, therefore, proved by the act to have been slaves.

5. The minors Grounx, being the children of Jean Grounx, were enfranchised by the mere act of treating them as freemen without any formality whatsoever. 4 *Partida, tit. 22, law 2. Institutes, book 1, tit. 5, l. 1.*

6. The act of the 21st of January, 1818, is a sale of the property in question to the minors Grounx. *Civil Code,* 263, *art.* 21. 5 *Martin, N. S.* 633. This sale has never been annulled by suit as fraudulent, and could be annulled only *by creditors. La. Code,* 1973, 1988. But there were no creditors. The suit to annul it, moreover, is prescribed. *Ibid.* 1989.

7. This act was not a disguised donation, because it has not been *proved* to be such: it has not been *attacked* as such; it could only be attacked by *forced heirs. La. Code, art.* 2419

8. If the act of the 21st of January, 1818, transferred the property to the minors Grounx, the sale to them of the same property by the transaction is null, and the price not recoverable. *La. Code, art.* 2418.

9. There was no transaction on the act of 1818, for it was either not exhibited at all, or was regarded by the family meeting as a nullity. If it was not *exhibited* at all, or being exhibited was treated as a *nullity,* the transaction was made as to it, entirely in error; and is not, therefore, binding upon the minors Grounx. *La. Code, arts.* 1818, 1819, 1835.

10. If the property was transferred to the minors Grounx, by the act of 1818, they have never been divested of it, and could not be by the acts of Grounx or Adelaide afterwards.

11. It is said, finally, that the children of Jean Grounx have lost their recourse upon this property, by sharing its proceeds as his testamentary heirs; that they cannot have the price and the thing. They were not testamentary heirs; but only *legatees* of one-half of his estate. Their legacy cannot be reduced on account of debts, and can only be reduced by an action in behalf of the forced heirs. *La. Code,* 1491.

12. By the settlement of Grounx's succession, their mother is made to receipt to Abat, as dative executor, for two thousand four hundred dollars; and by Abat's account, as syndic of her creditors, nearly the same sum is brought in as a privilege credit in favor of the children. But, by the compromise, it is seen that the two thousand four hundred dollars had never been paid, and the executors transfer in payment of that sum a family of slaves.

*J. Seghers,* for appellees, in conclusion.

1. The second judgment appealed from, and maintaining the execution of the order of seizure and sale, notwithstanding the appeal, is correct, because security is only given for costs. The appeal is not *suspensive.*

2. All the facts we have alleged, as actual owners of the lot in question, when we conveyed it to to the plaintiffs by the act of compromise, are to be found in the record. The appellees are subrogated to the right of the forced heirs of Grounx, who have received the price. They are in fact the assignees of those heirs.

3. As to the family of negroes mentioned, there is neither proof nor allegation on record of the pretended ownership of the late J. B. Grounx. There is, on the contrary, evidence of the slaves having been the property of *Adelaide;* for it appears those slaves were surrendered by her to her creditors; and on this point, the judgment of homologation of the tableau of distribution is *res judicata* against the appellants.

Eastern Dist.
June, 1834.

GROUNX ET ALS.
f. p. c.
*vs.*
ABAT'S EX'S.

EASTERN DIST.
June, 1834.

GROUNX ET ALS.
f. p. c.
vs.
ABAT'S EX'S.

*Bullard, J.* delivered the opinion of the Court.

The controversy in this case, grows out of a transaction or compromise, entered into between the minors Grounx, natural colored children of Jean Grounx, deceased, and the testamentary executors of Antoine Abat. This compromise, made in pursuance of the advice of family meetings, on both sides, recites that Antoine Abat, having been in his life-time, successively, the attorney in fact of their natural father, dative executor of his last will, syndic of the creditors of their natural mother, Marie Adelaide, a. f. w. c., and finally syndic of the creditors of Rosiliette Pradere, a debtor of their father ; and difficulties having arisen on the part of the said natural children, touching the manner in which Abat had performed these different successive duties, and a law-suit, being about to be instituted by them, against said *Abat, in his life-time, a projet* of a transaction had been drawn up, in order to terminate amicably, the differences existing between them, by which *projet* Abat was to *retrocede* to them certain property, and slaves, which had been the property of their father. Before this *projet* had ripened into a contract, by the final consent of the parties, Abat died. His executors then came forward, and with the advice of a family meeting, finally concluded the transaction on the 3d of October, 1832. It is therein stipulated, that the minors renounce every kind of reclamation, which they might have against the succession of Abat, on whatever account it may be, and particularly on account of any want of formality or other, whatever, in the acts of the different administrations above mentioned. The executors, on their part, transfer to the minors, a family of slaves, and a certain lot, and the improvements thereon, situated at the corner of the Bayou Road and Rampart-street. The price of the slaves, is declared to be the sum of two thousand four hundred dollars, due to the said heirs of Grounx, by privilege according to the tableau of distribution made by Abat, as syndic of the creditors of Marie Adelaide, their mother, for the share of those children, in the estate of their father, as appears by the executor's account of his administration of that estate, which sum remaining in the hands of

EASTERN DIST.
June, 1834.

GROUNX ET ALS.
f. p. c.
vs.
ABAT'S EX'S.

Abat, he had employed it in purchasing for them, the said family of slaves. They give a full and final acquittance and discharge of the sum thus due to them. The price of the property on the Bayou Road and Rampart-street, is declared to be four thousand nine hundred dollars, payable in December following, and secured by mortgage. The parties finally declare, that in consideration of this transaction, they remain mutually released, from all demands and claims *whatever*, *on whatever account they may be*.

The price of the lot of ground, not being paid when it fell due, the executors of Abat obtained an order of seizure and sale, and the minors Grounx, represented by their under tutor, made opposition, and obtained an injunction, on the grounds, that the lot and appurtenances were, at the time of the transaction, already their own property, by virtue of a sale, made by their natural father to them, on the 21st of January, 1818, passed before a notary public; that there was, therefore, error in the transaction, as they could not purchase, what was already their own, and that no mention is made in the transaction of the deed above recited. They conclude by a prayer that the property may be deemed to belong to them, in virtue of the act of sale of the 21st January, 1818, and that their tutor may be ordered, not to pay to the executors of Abat, any part of the price, and that the transaction may be declared null, so far as it relates to the sale of the aforesaid lot of land.

In their answer to this petition, the executors of Abat admit the transaction, but deny that it was entered into in error, or procured by unlawful means. They aver, that the act of the 21st January, 1818, was well known to all parties, at the time the transaction took place, to be a perfect nullity. They set out several grounds, on which they aver it is null and void.　1st. That it wanted consideration, and was evidently a disguised donation.　2d. As a donation it contained conditions contrary to good morals.　3d. It was not recorded with the recorder of Mortgages.　4th. That it exceeded the disposable portion of the donor's estate.　5th. That it was afterwards acknowledged and declared by the donor, to be a mere donation in his testament of the 5th October, 1819.

EASTERN DIST.
*June*, 1834.
GROUNX ET ALS.
f. p. c.
*vs.*
ABAT'S EX'S.

6th. Because the natural father and mother, afterwards in 1821, by notarial act, declared said act to be feigned and simulated, and they expressly annulled and revoked it. 7th. Because the same property was afterwards inventoried, and sold by the Court of Probates, as a part of the succession of their natural father. 8th. Because in the settlement of said succession, the minors received their shares, of the price for which the property now claimed, was sold ; and 9th. Because the said minors were slaves, at the time of the pretended purchase and incapable of contracting.

The act of sale or donation, out of which this controversy has arisen, is in substance as follows. Grounx, the natural father of the plaintiffs, acknowledges that he sells and conveys to Marie Adelaide, f. w. c. present and accepting as purchaser for her children by name, *all minors under the age of puberty*, the lot of land in question, for the price of five thousand dollars, which he acknowledges he has received out of the view of the notary and witnesses, renouncing the exception of *non numeratâ pecuniâ*. He acknowledges that the children are his natural children, by the said Adelaide. The usufruct of the property, is expressly reserved to Adelaide during her natural life, but it is stipulated, that at her decease, the property shall pass, of right to the said minors, to be by them holden jointly, or to be divided in equal portions among all the children of Adelaide, who shall have been duly acknowledged by the vendor, at the time of his death.

Two questions are presented by the pleadings for the consideration of the Court. 1st. Did the minors Grounx, acquire a title to the lot of land, by the contract above recited ? and 2d. If so, has their title been divested by the sale of it, which was provoked by Abat, as a part of their father's estate, by their claiming and receiving a part of the price, as testamentary heirs, in virtue of a judicial decree, and finally by the transaction in question ?

Where colored persons have been treated with as *free* in a certain transaction or compromise,

We leave out of view, altogether, the question which is raised, touching the liberty of these minors. Having treated with them as free, the representatives of Abat could not be received to question their capacity, with a view of

Eastern Dist.
June, 1834.

GROUNX ET ALS.
f. p. c.
vs.
ABAT'S EX'S.

their freedom and capacity to enter into such an engagement, cannot afterwards be questioned by the other party with a view of avoiding the contract, on the ground that they were slaves; much less for the purpose of depriving them of the common privilege of all parties to a contract, i. e. that of contesting its validity on the score of error and fraud.

avoiding the contract, as relates to the succession, much less for the purpose of depriving them of the common privilege of all parties to a contract, that of contesting its validity, on the ground of error or fraud.

The view which the Court has taken of the second question, renders it unnecessary to decide, what rights were acquired by the minors, in virtue of the act of January, 1818. Assuming, that on the death of their mother, they would have been entitled to the property as purchasers, or as donees, of their natural father, we come at once to the principal question in the cause, have they lost those rights by their own acts or consent, or are they precluded from enforcing them by any judgment of a Court of competent jurisdiction, which as to them, in relation to this property, has the authority of the thing adjudged?

In 1821, Grounx, and Marie Adelaide, went before a notary and declared that the act above referred to, was a simulation; that no price was paid, and that the vendor never intended to divest himself of his title, and they formally annul and cancel the contract. It is hardly necessary to state so plain a proposition, as that the title acquired by the minors, could not legally be divested, by such an act alone. Their mother had the capacity to acquire for her children, but she was incapable of annulling their title, by her mere consent.

In the course of the same year, Grounx made his last will and testament, which after his death, in 1823, was ordered to be executed by the Court of Probates. By this will, he acknowledges these same natural children by Adelaide, and declares, that, in order to provide for them the means of subsistence, according to the dictates of humanity, he bequeaths to them a moiety of all the property, moveable and immoveable, which he shall leave at his death, in case his two sisters, whom he institutes as his heirs, or either of them should survive him; but in the contrary case, he gives them three-fourths, and in either case, he gives his natural children the right of taking, if they think proper, at the estimated value, stated in the inventory, the lot with the house and other buildings and appurtenances, *belonging to him, situated at the*

EASTERN DIST.
June, 1834.

GROUNX ET ALS.
f. p. c.
*vs.*
ABAT'S EX'S.

*corner of the Bayou Road and Rampart-street*, the same property now in controversy. The executors named in the will, declined to accept the charge, and Antoine Abat, was appointed dative executor. The lot above mentioned, was estimated in the inventory at five thousand dollars, and was sold at public sale, by the Register of Wills, for the sum of four thousand nine hundred and fifty dollars. According to the tableau, filed by the executors, the net proceeds of the estate amounted to four thousand eight hundred dollars, of which one-half appears to have been paid over to Marie Adelaide, as tutrix of their minor children, and the other half to the instituted heirs. The tutrix consented to the final homologation of the account, and the account of the executors was finally approved and homologated, by a judgment of the Probate Court, " *as consented to by all parties concerned.*"

This is one of the administrations, the irregularities or informalities of which it was the object of the transaction between these parties to cure. What were those irregularities and nullities, as relate to the minor legatees, and of which they had a right to complain? There occur to us, from an examination of the record only four : 1st. That the executor caused the lot in question to be inventoried, as a part of the estate, and disregarded their title by the deed of 1818, of which he had knowledge. 2d. That they had a right to take the property at its estimated value, in part or in lieu of their legacy, by universal title. 3d. That it was sold for less than its appraised value, and 4th. That the homologation of his account, was procured by the consent of their tutrix, and not pronounced contradictorily with them.

It is a sufficient answer to the first, that it was the duty of the executor to maintain the will, and as the lot in question was expressly declared by the testator, to form a part of his estate, the executors could not avoid administering upon it as such, unless inhibited by competent authority. 2d. and 3d. How could the minors complain that the property had been sold, and they deprived of the privilege of retaining it, on account of their legacy at its appraised value? The very right to retain it under the will, implies necessarily, that the

The executor is bound to administer on all the property of a succession which is expressly declared in the will by the testator to form a part of his estate; even on property claimed by an adverse title, unless inhibited by competent authority.

property belonged to the estate, and not to themselves.    It is  <span style="font-variant:small-caps">Eastern Dist.</span>
difficult to conceive, how they could claim, as legatees under   *June,* 1834.
the will, without giving up their own pretensions, to the        <span style="font-variant:small-caps">Groumx et als.</span>
property, by an anterior conveyance.    The intention of the      f. p. c.
testator clearly was, to give them the disposable portion of       *vs.*
his property, including, as a part of it, the lot of land and    <span style="font-variant:small-caps">Abat's Ex's.</span>
buildings, at the corner of the Bayou Road and Rampart-          Persons claim-
street. They cannot, at the same time, take their legacy and     ing as legatees
repudiate the will.    Their tutrix acknowledges, that she had   under a will can-
received for her children, the sum of two thousand four         not set up title to
hundred dollars, one-half of the net proceeds of the estate,    property under
including the price of the lot in question.    But it is objected an anterior sale
4thly, that the judgment of the Probate Court, approving        and conveyance,
the executor's account, was rendered by consent of parties.     which is express-
Admitting that this judgment was not conclusive ; that the      ly delared in the
minors might have been relieved against it, it is clearly provi- will to form a
ded for by the transaction.    If the expression used in the trans- part of the estate
action ; *De quelque défaut de formalité ou autre, que ce soit dans* of the testator.
*les actes de ses différentes administrations,*" do not comprehend
all the above enumerated acts or omissions, we are at a loss to  A transaction
know to what they do apply.                                      entered into on
                                                                 the part of the
But we come next to examine the administration of Abat, as      minors, duly re-
syndic of the creditors of Marie Adelaide, the mother and tutrix presented, and
of the plaintiffs. After she had received her children's share in made according
their father's estate, she made a *cessio bonorum.*    Among her to the forms of
creditors, she enumerates her children, represented by Nicolas   law, will cure
Monrose, as curator *ad lites* for one of them, and under tutor  defects in a judg-
for the rest, for two thousand four hundred dollars, for their   ment which was
inheritance in the succession of their father, by tacit mort-    not conclusive,
gage, from the 22d May, 1824.    The under tutor and one of      and against
the minors, personally assisted by his curator *ad lites*, appear- which the minor
ed before the notary at the meeting of the creditors, swore to   might otherwise
their claim as above described, and voted for syndic.    A       be relieved.
tableau of distribution was afterwards filed by Abat, as syndic,
a rule taken on the creditors, to show cause why it should not
be homologated, and finally no cause having been shown, was
homologated by judgment of the District Court.    This judg-
ment appears on the face of it, to be binding on all the parties.

EASTERN DIST.
June, 1834.
─────────
GROUNX ET ALS.
f. p. c.
vs.
ABAT'S EX'S.

Where the curator *ad bona* of a minor above the age of puberty, purchased property for the use and in the name of his ward, at the sale of his father and mother's estate, and during his minority, in an action of partition he is charged with his share of the estate thus purchased and received, by a judgment of the Probate Court: In an action to set aside the purchase as having been made without his concurrence and consent: *Held*, that he was precluded by the judgment of the Probate Court so long as it stood unreversed.

Where the price of minors' property has been received by their tutor, and placed to their credit on a tableau of distribution of the tutor's estate, which is homologated by a judgment of the Probate Court, is unappealed from, the minors are precluded from setting up title to the property itself so long as the judgment of homologation

The claim by the minors was necessarily composed, in part, of the price of the property, to which they now set up title, and which had been received by their tutrix from the executor of their father's will. It rests on the hypothesis, that the lot remained the property of their father, that it was disposed of by his will; that they acquiesced in the will and its execution, by receiving their legacy, representing one-half of the estate in money; and it appears to the Court, wholly inconsistent with the pretensions of the plaintiffs to claim the lot in controversy.

In the case of *Martin* vs. *Martin's heirs, et als.*, the plaintiff was a minor over the age of puberty. His curator, *ad bona*, without his concurrence, purchased real estate and slaves, at the sale of his father and mother's estate in his name, on account of his share in the estate. During his minority, in an action of partition, in which he was represented by a curator *ad lites*, he was by judgment of the Probate Court, charged with his share of the estate thus received by his curator *ad bona*. He afterwards sued to set aside the purchase, as having been made without his concurrence and consent. But this Court held that he was precluded by the judgment of the Probate Court, so long as that judgment stood unreversed. 5 *Martin, N. S.* 165.

That case is strongly analogous to this, and we think the same principle will apply. While the judgment of homologation subsists, showing that they had received the price of the property in question, as a part of their father's *estate*, the minors are precluded from setting up a title to it as their own. This is indeed a much stronger case than the one quoted, because in that case, the Probate Court would have been without jurisdiction to decide on the authority of the curator *ad bona*, to purchase for his ward, if that question had been brought directly before it, and in this the District Court having general jurisdiction, was competent, in whatever shape the question may have been presented.

Thus far we have examined this question, in a great measure independently of the transaction or compromise, we have considered the rights of the parties in relation to the

property, mainly according to the evidence relating to the different administrations of Abat, sanctioned by judicial authority. We have looked at it, as if no such transaction existed, and this suit had been brought directly for the property, under the title of January, 1818. Let us examine how the matter stands under the compromise, and whether such error has been shown, as will vitiate the contract.

Transactions according to the Code, have, between the parties, a force equal to the authority of the thing adjudged, and when the parties have compromised, generally on all differences which they might have had with one another, the titles which they know nothing of, and which were afterwards discovered, are not a cause of rescinding the transaction, unless they have been kept concealed on purpose, by the act of one of the parties. *La. Code, arts. 3045 and 3050.*

The renunciation of all claims and demands in this act of compromise, is as general as words could well make it, and there is no evidence that the latent title of 1818, was concealed on purpose, by the executors of Abat. It has been said, that it was not taken into view at all. Admit that it was not. Still it is certain, that the parties had in view, the administration of Abat, as executor of Grounx, and as syndic of the creditors of Marie Adelaide, and it must have been known to both parties, that the property now claimed, had been sold by the executor, as a part of the estate. There is one clause in the transaction, not a little remarkable, and which seems to us conclusive. The price of the slaves conveyed by the executors of Abat, is declared to be two thousand four hundred dollars, " due by privilege to said minors Grounx, according to the tableau of distribution, deposited in the District Court, by Mr. Abat, as syndic of the creditors of Marie Adelaide, for the share coming to said heirs, in the succession of their father, as appears by the account of said succession, rendered by Mr. Abat, before the Court of Probates, which sum had been received by said Marie Adelaide Grounx, in her capacity of tutrix, according to her receipt in the Court of Probates." They go on to admit, that this sum had been employed in the purchase of the family of slaves, and they give a full

EASTERN DIST.
June, 1834.

GROUNX ET ALS.
f. p. c.
vs.
ABAT'S EX'S.

subsists showing they have received the *price*.

Transactions have between the parties the authority of the thing adjudged. And where the parties compromise generally on all differences, the titles which are unknown and afterwards discovered, are not cause for rescinding the transaction, unless they have been concealed purposely by one of the parties.

And where the renunciation of all claims and demands in an act of compromise or transaction is full and explicit, and no mention is made of a latent title to certain property included in the transaction, but no evidence showing that the title was concealed on purpose by the party, the transaction will not be rescinded.

EASTERN DIST. and final acquittance. This sum formed in part the price of
*June*, 1834. the property now claimed, and after recovering the price, they

GROUNX ET ALS. cannot claim the thing.
f. p. c.
*vs.*                Judgments rendered by Courts of competent jurisdiction,
ABAT'S EX'S.    against minors, duly and legally represented, so long as they
Judgments ren-
dered by courts are not reversed or declared to be null, have the same force
of competent ju-
risdiction  a-  and validity as if the parties were both of full age.  In the
gainst  minors  case before the Court, the judgment homologating the tableau
duly and legally
represented,  so  in the *concurso* of Marie Adelaide, and that approving the
long as they are
not reversed or  account rendered by Abat as executor of Grounx, rest on the
declared to be  hypothesis, that the property in dispute, formed a part of the
null,  have the
same force and  succession of Grounx, of which one-half was bequeathed to
validity as if the
parties were of  the plaintiffs, and it was adjudged, that they should receive
full age.        one-half of the price in lieu of their legacy.  The subse-

In an appeal  quent transaction adopted the same hypothesis, confirms the
where  security  former judgments, cures all the irregularities and nullities in
is given merely
and expressly for  the administration of the estate, and has, as to all those
costs, the execu-
tion of the judg-  matters, the authority in itself of the thing adjudged.
ment below is
not  suspended     Upon the question, whether this appeal should be consider-
thereby.  It is  ed as suspensive, or merely devolutive, we agree with the
not a suspensive,
but merely a de- judge *à quo*, that security having been given, merely and
volutive appeal.  expressly for costs, the execution of the judgment below, was

An injunction  not suspended by the appeal.  The injunction bond, given at
bond  given at  the inception of the suit, cannot be cumulated with the appeal
the inception of
the suit, cannot  bond.  The conditions of the two bonds, are essentially dif-
be  cumulated
with the appeal  ferent.  The security on the injunction bond, is not bound for
bond given in  any part of the judgment to be rendered on the appeal,
the same suit on
appeal.          except for damages ; he is liable only for such damages as
                 the party may have sustained, if it should appear that the
                 injunction was wrongfully obtained.  ·

It is, therefore, ordered, adjudged and decreed, that the
judgment of the Parish Court, be affirmed with costs.